**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 (Subchapter V) |
| FIVE64, LLC,[1] | § § | Case No. 23-30767-swe11 |
| Debtors. | § § § | (Jointly Administered) |

**DEBTORS' JOINT CONSOLIDATED**
**CHAPTER 11 SUBCHAPTER V PLAN OF LIQUIDATION**

Thomas D. Berghman, Esq.
Texas Bar No. 24082683
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard St., Ste. 3800
Dallas, Texas 75201
tberghman@munsch.com

*Counsel to the Debtors and Debtors-in-Possession*

Dated: July 18, 2023

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Five64, LLC (0982) and 64 IP Holdings, LLC (0685).  The location of the Debtors' service address is: 10 N Caddo St PMB 137, Cleburne, TX 76031-5540.

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................................ 3

   A.  Debtors' Background ............................................................................................. 3

   B.  Developments During the Bankruptcy Case ......................................................... 3

   C.  Sale of the Debtors' Assets .................................................................................... 4

   D.  Summary of the Plan ............................................................................................. 4

**Article I.** Definitions and Interpretation ......................................................................... 4

**Article II.** Classification of Claims and Equity Interests ............................................. 10

**Article III.** Provisions for the Treatment of Unclassified Claims ............................... 11

**Article IV.** Provisions for the Treatment of Classified Claims ................................... 12

**Article V.** Means for Implementation of the Plan ....................................................... 14

**Article VI.** Acceptance or Rejection of Plan .............................................................. 17

**Article VII.** Subchapter V Considerations .................................................................. 18

**Article VIII.** Treatment of Disputed Claims and Objections to Claims ...................... 18

**Article IX.** Effects of Plan Confirmation ................................................................... 20

**Article X.** Conditions Precedent ................................................................................. 21

**Article XI.** Retention of Jurisdiction and Claims ....................................................... 22

**Article XII.** Miscellaneous Provisions ....................................................................... 25

**Article XIII.** Confirmation Request ............................................................................ 26

## INTRODUCTION

### A.    Debtors' Background

Five64, LLC and 64 IP Holdings, LLC (collectively, the "Debtors") were formed in August 2016 to provide—using technologies developed by 64 IP and under exclusive license with Five64—title and registration services to buyers and dealers, and contract processing services to financial institutions, dealer organizations, and service providers, in the motor vehicle industry.

In 2022, in response to cash flow difficulties caused predominantly by one of the Debtors' largest customers, Avalara, Inc., the Debtors entered into agreements (the "Factoring Agreements") with several "factoring" lenders (the "Factors"), pursuant to which the Debtors obtained funds for operations, which were allegedly secured by Five64's account receivables. After alleged defaults by Five64 under the Factoring Agreements, the Factors sent default notices to certain of Five64's customers claiming liens on Five64's accounts receivables. The customers then notified Five64 that they were holding accounts receivables in suspense pending either a court order or settlement agreement between Five64 and the Factors, which further complicated the Debtors' cash flow dilemma.

To address the cash flow issues, the Debtors reached out to several parties to discuss potential strategic transactions. Following extensive negotiations, the Debtors entered into an asset purchase agreement with Tekion Digital Processing, Inc., f/k/a Cartwheel Acquisition Sub, Inc. ("Purchaser"), for the sale of substantially all of the Debtors' assets for total consideration of $3.2 million, consisting of cash and a credit bid of up to $650,000 in debtor-in-possession financing from Purchaser to finance ongoing operations.

Due to interest expressed by other parties in a potential purchase transaction and in order to maximize value, the Debtors determined that the best way forward would be for the Debtors to commence a chapter 11 bankruptcy and conduct an open sale process with Purchaser to serve as a stalking horse bidder.

### B.    Developments During the Bankruptcy Case

On April 19, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, and the Bankruptcy Court entered an order authorizing procedural consolidation and joint administration of the cases [Docket No. 33]. Frances A. Smith was appointed as the Subchapter V trustee [Docket No. 30].

On the Petition Date, the Debtors filed various emergency motions requesting relief essential to maintaining their business operations, including authority to continue operating their existing cash management system [Docket No. 5], approval of proposed adequate assurances of payment for future utility services [Docket No. 6], and authority to pay pre-petition employee wages [Docket No. 10], each of which the Bankruptcy Court granted after a hearing on April 21, 2023.

On the Petition Date, the Debtors filed their *Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to the Prepetition Secured Party,*

*(IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 8] (the "DIP Financing Motion").  Pursuant to the interim and final orders granting the DIP Financing Motion, *see* Docket Nos. 55 and 73, the Bankruptcy Court authorized the Debtors to obtain post-petition financing from Purchaser to finance the Debtors' operations prior to the consummation of a sale.

**C.      Sale of the Debtors' Assets**

On the Petition Date, the Debtors filed emergency motions to sell substantially all of their assets [Docket No. 7] and to approve bid procedures [Docket No. 9] to conduct an open sale process, including a potential auction in the event of multiple qualified bids.  On April 24, 2023, the Bankruptcy Court approved the bid procedures [Docket No. 43], and on May 23, 2023, the Bankruptcy Court entered its order [Docket No. 88] approving the sale of the Debtors' assets to Purchaser (the "Sale").  The Sale closed on June 1, 2023, and the Debtors received the $2.55 million in cash consideration (the "Sale Proceeds").

**D.      Summary of the Plan**

The *Joint Consolidated Chapter 11 Subchapter V Plan of Liquidation* (this "Plan") is a liquidating chapter 11 plan that provides a path to confirmation and a successful exit from chapter 11 through the creation of a Creditor Trust, which will be vested with the Sale Proceeds, contest the liens and claims asserted by the Factors, and make distributions to creditors holding allowed claims.

The Sale Proceeds are sufficient to pay all creditors in full, even before taking into account the Debtors' strong arguments and objections against the Factors' alleged liens and claims.  Therefore, since all allowed claims will be paid in full under the Plan, the Debtors believe the Plan will have no impaired classes and is likely to be consensual pursuant to 11 U.S.C. § 1191.

**ARTICLE I.**
**DEFINITIONS AND INTERPRETATION**

1.1      Rules of Interpretation.

    (i)      Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, Article of, or Exhibit to this Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and *vice versa*.  In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

    (ii)      In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

    (iii)      Where a creditor or holder of any right under this Plan is named by name, such naming shall include any successor-in-interest to any right of such creditor.

1.2    <u>Definitions</u>.  Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.  Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

"**<u>64 IP</u>**" means 64 IP Holdings, LLC.

"**<u>Administrative Claim</u>**" means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estates pursuant to 28 U.S.C. § 1930, and further including a Professional Claim.  For the avoidance of doubt, Administrative Claims do not include Secured Tax Claims.

"**<u>Administrative Claims Bar Date</u>**" means the day that is thirty (30) days after the Effective Date.

"**<u>Administrative Tax Claim</u>**" means any *ad valorem* tax claim assessed against, or payable by, the Debtors or the Estates or their property for or on account of a period after the Petition Date, specifically excluding Secured Tax Claims.

"**<u>Allowed</u>**" as it relates to any type of Claim provided for under this Plan, but excluding a Professional Claim, means a Claim:

    (i)    which has been scheduled as undisputed, noncontingent, and liquidated in the Schedules in an amount other than zero or unknown, and as to which:

        a.  no proof of Claim has been timely filed; and
        b.  no objection has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline);

    (ii)    as to which a proof of Claim has been timely filed and either:

        a.  no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); or
        b.  such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court;

    (iii)    which has been expressly allowed under the provisions of this Plan; or

    (iv)    which has been expressly allowed by Final Order of the Bankruptcy Court.

"**<u>Allowed Administrative Claim</u>**" means:

(i)     an Administrative Claim that has been Allowed (but only to the extent
Allowed), if approval from the Bankruptcy Court is required in order to
Allow the same; or

(ii)    an Administrative Claim which:

    a.  is incurred by the Debtors after the Petition Date in the ordinary course
of business operations or pursuant to an order entered by the Bankruptcy
Court granting automatic Administrative Claim status;

    b.  is not disputed by the Debtors; and

    c.  does not require approval from the Bankruptcy Court to become
Allowed.

"**<u>Allowed Priority Claim</u>**" means a Priority Claim that has been Allowed (but only to the
extent Allowed).

"**<u>Allowed Secured Claim</u>**" means a Secured Claim that has been Allowed (but only to the
extent Allowed).

"**<u>Allowed Unsecured Claim</u>**" means an Unsecured Claim that has been Allowed (but only
to the extent Allowed).

"**<u>Avoidance Actions</u>**" means any and all rights, claims, or actions which the Debtors may
assert on behalf of the Estates under Chapter 5 of the Bankruptcy Code, including actions
under one or more provisions of sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551,
and/or 553 of the Bankruptcy Code.

"**<u>Bankruptcy Case</u>**" means the jointly administered bankruptcy cases of Five64 (Case
No. 23-30767) and 64 IP (Case No. 23-30769) under the lead case number of 23-30767.

"**<u>Bankruptcy Code</u>**" means 11 U.S.C. §§ 101, *et seq.*, in effect as of the Petition Date and
as may have been or may be amended or supplemented since, to the extent that any such
amendment or supplement is automatically applicable to the Bankruptcy Case by operation
of law and not by operation of any election or choice.

"**<u>Bankruptcy Court</u>**" means the United States Bankruptcy Court for the Northern District
of Texas, Dallas Division, or, if such court ceases to exercise jurisdiction, the court or
adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

"**<u>Bankruptcy Rules</u>**" means the Federal Rules of Bankruptcy Procedure, together with the
local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from
time to time hereafter be amended.

"**<u>Bar Date</u>**" means June 28, 2023 for Claims of persons other than Governmental Units,
and October 16, 2023 for Claims of Governmental Units.

"**Business Day**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"**Causes of Action**" means all claims and causes of action of the Debtors or the Estates against any person that arose, accrued, existed, or could have been asserted prior to the Effective Date.

"**Claim**" means a claim against one or more of the Debtors, the Estates, and/or property of the Debtors or the Estates, as such term is otherwise defined in section 101(5) of the Bankruptcy Code, and arising at any time prior to the Effective Date, including first arising after the Petition Date, regardless of whether the same would otherwise be a claim under section 101(5) of the Bankruptcy Code.

"**Claims Objection Deadline**" means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be one-hundred and eighty (180) days after the Effective Date, except with respect to Administrative Claims and Disputed Claims as otherwise provided for herein.

"**Class**" means one of the categories of Claims and Equity Interests established under Article II of this Plan.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled, or delayed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

"**Consolidated Estate**" means the substantively consolidated estate created under section 5.1 of this Plan.

"**Creditor**" means the holder of any Claim entitled to distributions under this Plan with respect to such Claim.

"**Creditor Trust**" has the meaning assigned to it in section 5.3.1 of this Plan.

"**Creditor Trust Agreement**" means the Five64 Trust Agreement, a form of which is attached to the Plan as **Exhibit B**.

"**Creditor Trust Assets**" has the meaning assigned to it in section 5.3.4 of this Plan.

"**Creditor Trust Trustee**" has the meaning assigned to it in section 5.3.2 of this Plan.

"**Debtors**" mean Five64, LLC and 64 IP Holdings, LLC.

"**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, except an Administrative Claim (or a Professional Claim), a Claim or portion thereof that:

(i)     has been disallowed by a Final Order of the Bankruptcy Court;

(ii)    is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not filed by the Bar Date; or

(iii)   is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such proof of Claim is otherwise required.

"**Disputed Claim**" means, with respect to any Claim, any Claim that is not yet Allowed.

"**Effective Date**" means the first Business Day fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed; or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay that is at least fourteen (14) days after the Confirmation Date, and upon which the conditions to the effectiveness of the Plan set forth in Article X hereof are satisfied.

"**Equity Interests**" means all stock, share, or other securities evidencing any ownership of any equity or ownership interest of the Debtors.

"**Estates**" means the estates created for the Debtors pursuant to section 541 of the Bankruptcy Code and any other applicable provision thereof.

"**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtors as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code, except to the extent rejected on or prior to the Confirmation Date by the Debtors.

"**Factoring Agreements**" means those certain agreements entered into between Five64 and the Factors.

"**Factors**" means the "factoring" lenders listed on the Schedule D filed by Five64 [Docket No. 50], including, (a) City Capital NY; (b) Cucumber Capital, LLC; (c) Fox Capital Group, Inc.; (d) Fundamental Capital, LLC; (e) ODK Capital, LLC; (f) Pearl Delta Funding, LLC; (g) Swift Funding Source Inc.; (h) Unique Funding Solutions LLC; and (i) Wynwood Capital Group LLC.

"**Factors' Claims**" means the Claims asserted by the Factors.

"**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Order**" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction

over the subject matter thereof, which judgment, order, ruling, or other decree has not been
reversed, stayed, modified, or amended and as to which:

(i)     the time to appeal or petition for review, rehearing, or certiorari has expired
and as to which no appeal or petition for review, rehearing, or certiorari is
pending; or

(ii)    any appeal or petition for review, rehearing, or certiorari has been finally
decided and no further appeal or petition for review, rehearing, or certiorari
can be taken or granted.

"**Five64**" means Five64, LLC.

"**Governmental Unit**" means a governmental unit as such term is defined in
section 101(27) of the Bankruptcy Code.

"**Person**" means and includes natural persons, corporations, limited partnerships, general
partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated
organizations, or other legal entities, irrespective of whether they are governments,
agencies, or political subdivisions thereof.

"**Petition Date**" means April 19, 2023.

"**Plan**" means this *Debtors' Joint Consolidated Chapter 11 Subchapter V Plan of
Liquidation*, either in its present form or as it may be altered, amended, or modified from
time to time.

"**Plan Funding**" means all of the Debtors' cash as of the Effective Date, including the Sale
Proceeds.

"**Priority Claim**" means any Claim entitled to priority in payment under section 507(a) of
the Bankruptcy Code, excluding any Claim that is an Administrative Claim or that is a
Secured Tax Claim.

"**Professional**" means any Person employed or to be compensated pursuant to
sections 327, 328, 330, 331, or 1103 of the Bankruptcy Code.

"**Purchaser**" means Tekion Digital Processing, Inc., f/k/a Cartwheel Acquisition Sub, Inc.

"**Professional Claim**" means a Claim by a Professional for compensation and/or
reimbursement of expenses pursuant to sections 327, 328, 330, 331, or 1103 of the
Bankruptcy Code in connection with an application made to the Bankruptcy Court.

"**Rejection Damages Claim**" means the Claim in favor of a counterparty to an Executory
Contract that is rejected by the Debtors but that is not an Administrative Claim.

"**Rejection Damages Claim Bar Date**" means the day that is thirty (30) days after the Effective Date, if the Executory Contract giving rise to the Rejection Damages Claim is rejected under this Plan.

"**Sale**" means the sale of substantially all of the Debtors' assets to Purchaser, which was approved by the Bankruptcy Court on May 23, 2023, and which closed on June 1, 2023.

"**Sale Proceeds**" means the $2.55 million in cash consideration the Debtors received from the Sale.

"**Schedules**" means the Schedules of Assets and Liabilities filed by Five64 at Docket No. 50 in Case No. 23-30767 and by 64 IP at Docket No. 11 in Case No. 23-30769, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

"**Secured Claim**" means a Claim that is alleged to be secured, in whole or in part, (i) by a lien against an asset of the Debtors or the Estates; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code.

"**Secured Tax Claim**" means a Claim of a Governmental Unit for the payment of *ad valorem* real property and business personal property taxes that is secured by property of the Debtors or the Estates arising prior to the Petition Date.

"**Substantial Consummation**" means the date on which any of the following first happens: (i) the Creditor Trust Agreement is executed and delivered; or (ii) the Bankruptcy Court otherwise finds that substantial consummation within the meaning and operation of the Bankruptcy Code has occurred.

"**Unsecured Claim**" means any alleged Claim against the Debtors that is not secured by (or to the extent not secured by) a valid, enforceable, and unavoidable lien against any asset of the Debtors or the Estates, including any deficiency claim, which does not enjoy any administrative or priority status under the Bankruptcy Code.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1    <u>Classification Generally</u>.  All Claims and Equity Interests, except Administrative Claims, are placed in Classes under the Plan.  A Claim is classified within a Class only to the extent that the Claim qualifies under the description of that Class.  A Claim that is properly includable in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2   <u>Unclassified Claims</u>.  The following types of Claims are not classified under the Plan:

> Administrative Claims
> Administrative Tax Claims

2.3   <u>Classified Claims and Interests</u>.  Claims and Equity Interests are classified under this Plan as follows:

| | |
|---|---|
| Class 1: | Priority Claims (Unimpaired) |
| Class 2: | Secured Tax Claims (Unimpaired) |
| Class 3: | Factors' Claims (Unimpaired) |
| Class 4: | Other Secured Claims (Unimpaired) |
| Class 5: | Unsecured Claims (Unimpaired) |
| Class 6: | Equity Interests (Not Applicable by Operation of Subchapter V) |

## ARTICLE III.
## PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS

3.1   <u>Administrative Claim Applications and Deadline</u>.  Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code; and (c) Administrative Claims for which the Bankruptcy Court has set a different filing deadline, must by no later than the Administrative Claims Bar Date: (x) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (y) serve a copy of such application on the Debtors, Creditor Trust Trustee, the United States Trustee, and all other parties otherwise entitled to notice thereof.  Failure to file and serve such application by the Administrative Claims Bar Date shall result in the Administrative Claim being forever barred and discharged as against the Debtors, their Estates, the Creditor Trust, and the property of any of the foregoing, including property transferred pursuant to the Plan.  Except as specifically provided in this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

3.2   <u>Treatment of Allowed Administrative Claims</u>.  Except with respect to Administrative Tax Claims (*see* Section 3.4 below), and unless previously paid, each holder of an Allowed Administrative Claim, including a Professional Claim, shall be paid in full satisfaction, release, and discharge of, and in exchange for such Allowed Administrative Claim, the amount of such Allowed Administrative Claim by the Creditor Trust, in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs, no later than thirty (30) days after the Effective Date or the date that an order is entered approving the Allowed Administrative Claim.

3.3   <u>Treatment of Professional Claims</u>. Professional Claims become Allowed the same as Administrative Claims in this Article (Section 3.1) and are treated the same as Administrative Claims in this Article (Section 3.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement for filing an application as provided for in Section 3.1; (ii) a Professional Claim that

has been Allowed on an interim basis (not final) in whole or in part shall, with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 3.1 and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement ten (10) days after the Administrative Claims Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis; and (vi) any Professional Claim based on payment under section 328 of the Bankruptcy Code by commission or contingency shall be allowed and paid as provided for in the retention order of the Bankruptcy Code, without need for the filing of any application or other document with the Bankruptcy Court notwithstanding anything contained herein to the contrary.

3.4    <u>Administrative Tax Claims</u>. Administrative Tax Claims, and any liens securing the same, are not affected, prejudiced, discharged, or treated by this Plan and shall survive this Plan without need for any action on the part of the holder thereof. Administrative Tax Claims, and the liens securing the same, shall be paid when and as otherwise appropriate, together with such interest and other charges as otherwise appropriate, as soon as possible after the Effective Date or when the same otherwise become due and payable from the Creditor Trust or Purchaser, as appropriate. Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan transfers or vests any property of the Debtors or the Estates free and clear of any lien securing an Administrative Tax Claim. All rights to contest any Administrative Tax Claim, including as may be appropriate under section 505 of the Bankruptcy Code, are preserved and vest in the Creditor Trust as of the Effective Date.

3.5    <u>Section 505</u>. For the avoidance of doubt, and without limiting the generality of any similar provision of this Plan, the Debtors and the Estates reserve all rights under section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said section 505 with respect thereto, and transfer the same hereunder to the Creditor Trust.

## ARTICLE IV.
## PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS

4.1    <u>Class 1: Priority Claims</u>. In full and final satisfaction, release, and exchange of each Priority Claim, each Priority Claim, to the extent Allowed, shall be paid by the Creditor Trust no later than ten (10) Business Days after the Claims Objection Deadline, if no objection is then pending, or ten (10) Business Days after the Priority Claim becomes Allowed by Final Order. Class 1 is not impaired under this Plan.

4.2    <u>Class 2: Secured Tax Claims</u>. No Secured Tax Claim is Allowed in this Plan and each Secured Tax Claim shall be subject to such objection or section 505 contest as may otherwise exist. Each Secured Tax Claim, to the extent Allowed, shall be paid by the Creditor Trust, together

with all applicable interest after the Petition Date and the Effective Date as provided for under applicable law, as is otherwise appropriate under applicable law or, if defaulted on by the Effective Date, within ten (10) Business Days thereafter in cash.  All liens securing any Secured Tax Claim shall remain in place with the same validity, extent, and priority as otherwise exists under applicable law and shall remain attached to all property of the Debtors, the Estates, or the Creditor Trust, including any inchoate lien, notwithstanding anything contained in this Plan

    4.3    <u>Class 3: Factors' Claims</u>.

        4.3.1    <u>Identification</u>.  Class 3 consists of the Factors' Claims.

        4.3.2    <u>Allowance</u>.  Nothing in this Plan Allows any Class 3 Factors' Claim, and the same shall be subject to allowance and to such objection as may otherwise exist.  For the avoidance of doubt, the Debtors dispute each of the Class 3 Factors' Claims, which will be liquidated by the Creditor Trust in accordance with Section 8.5 of this Plan.

        4.3.3    <u>Liens</u>.  All liens and security interests, if any, securing any Class 3 Factors' Claim shall remain attached to property of the Debtors, the Estates, and the Creditor Trust, with the same validity, extent, and priority as otherwise exists, and any such property shall vest in the Creditor Trust, subject to the same.  The Debtors and the Estates reserve all rights with respect to any alleged liens in connection with the Factors' Claims.

        4.3.4    <u>Treatment</u>.  In full and final satisfaction, release, and discharge of each Class 3 Factor's Claim, including any lien and security interest securing the same, each Class 3 Factor's Claim, to the extent Allowed, shall be paid by the Creditor Trust no later than ten (10) Business Days after the Claims Objection Deadline, if no objection is then pending, or ten (10) Business Days after the Factor's Claim becomes Allowed by Final Order.

        4.3.5    <u>Impairment</u>.  Class 3 is not impaired under this Plan.

    4.4    <u>Class 4: Other Secured Claims</u>.

        4.4.1    <u>Identification</u>.  Class 4 consists of any Secured Claim that is not a Factors' Claim.

        4.4.2    <u>Classification</u>.  Each Creditor in Class 4 shall be deemed to be a separate Class under this Plan but only with respect to any collateral and any Secured Claim.  Any deficiency Claim shall otherwise be bifurcated into a Class 5 Claim.

        4.4.3    <u>Allowance</u>.  Nothing in this Plan Allows any Class 4 Other Secured Claim, and the same shall be subject to allowance and to such objection as may otherwise exist.

        4.4.4    <u>Liens</u>.  All liens and security interests securing any Class 4 Other Secured Claim shall remain attached to property of the Debtors, the Estates, and the Creditor Trust, with the same validity, extent, and priority as otherwise exists, and any such property shall vest in the Creditor Trust, subject to the same.

4.4.5   <u>Treatment</u>.   No later than thirty (30) days after the Effective Date, the Creditor Trust Trustee shall elect one of the following treatments with respect to each Class 4 Other Secured Claim: (i) surrender the underlying collateral to the Creditor and use its reasonable, good faith efforts to do so, in full and final satisfaction of the Secured Claim, but subject to any deficiency Class 5 Unsecured Claim as is otherwise appropriate; or (ii) retain the collateral and cure and reinstate the underlying debt and obligation, thereafter paying the Allowed Secured Claim according to such terms.   If no option is elected, option (ii) shall be the default on the 31st day after the Effective Date.

4.4.7   <u>Impairment</u>.   Class 4 is not impaired under this Plan.

4.5   <u>Class 5: Unsecured Claims</u>.   Nothing in this Plan Allows any Unsecured Claim, unless expressly provided otherwise.   In full and final satisfaction, release, and exchange of each Unsecured Claim, each Unsecured Claim, to the extent Allowed, shall be paid by the Creditor Trust no later than ten (10) Business Days after the Claims Objection Deadline, if no objection is then pending, or ten (10) Business Days after the Unsecured Claim becomes Allowed by Final Order.   Class 5 is not impaired under this Plan.

4.6   <u>Class 6: Equity Interests</u>.   Pursuant to § 1191 of the Bankruptcy Code, equity shall be unaffected by the Plan.   At such time as the Creditor Trust Trustee determines appropriate, Class 6 Equity Interests will receive (a) the balance of the Creditor Trust Assets after the Creditor Trust Trustee determines the amount needed to be held in reserve to satisfy all potential Allowed Claims and to administer the Creditor Trust and (b) the balance of the Creditor Trust Assets after all distributions are made to holders of Allowed Claims and all costs of administering the Creditor Trust have been satisfied.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1   <u>Substantive Consolidation</u>.   On the Effective Date, and without need for further order, document, or action, the Estates shall be substantively consolidated into the Consolidated Estate free and clear of all liens, claims, interests, and encumbrances, except to the extent preserved or otherwise provided for in this Plan, such that all property of each of the Estates, unless provided otherwise in this Plan with respect to any specific property, shall be merged and consolidated into, and vest in, the Consolidated Estate and become the property of the Consolidated Estate, and such that all liabilities of each of the Estates, unless provided otherwise in this Plan with respect to any specific liability, and as such liabilities are treated in this Plan, shall attach to the Consolidated Estate and become the liabilities of the Consolidated Estate.   For the avoidance of doubt, any property vesting in the Consolidated Estate under this Plan shall be subject to all claims, liens, interests, encumbrances, and priorities concerning the same, as the same are provided for in this Plan, and subject to all defenses, claims, and Avoidance Actions that exist with respect to the same, but only to the extent such claims, liens, interests, and encumbrances are otherwise preserved or provided for in this Plan.   For the avoidance of doubt, any claim or cause of action held by one Debtor or its Estate against the other is cancelled.

5.2   <u>Plan Funding</u>.   As a condition of the Effective Date, and in addition to any other consideration provided in this Plan, the Debtors shall transfer to the Creditor Trust Trustee, for the

benefit of the Creditor Trust, the Plan Funding, which, notwithstanding anything contained herein to the contrary, shall not be repayable in any way by the Creditor Trust.

5.3     Creditor Trust.  The Plan creates a creditor trust as follows:

5.3.1     Creation.  On the Effective Date, and without need for further order, action, or document, the "Five64 Creditor Trust" (the "Creditor Trust") shall be created, the purpose of which is to liquidate all Creditor Trust Assets (as determined by the Creditor Trust Trustee, including potential surrender or abandonment of assets) and to make distributions to the beneficiaries of the Creditor Trust.  The Creditor Trust shall be a grantor trust under federal law and shall not have any liability to pay any income tax.

5.3.2     Trustee.  The Creditor Trust shall be solely and fully administered by Scott M. Seidel (the "Creditor Trust Trustee"), subject to resignation and replacement as otherwise provided for in the Creditor Trust Agreement.  The Trustee shall have the fiduciary duties of a trustee to the Creditor Trust.  Among other rights, duties, and powers, the Creditor Trust Trustee shall have the right, standing, and ability to: (i) liquidate and monetize all Creditor Trust Assets; (ii) sue in the name of the Creditor Trust and prosecute and recover for the Creditor Trust Causes of Action otherwise transferred to the Creditor Trust under this Plan and including, without the need for special pleadings or filings, substituting for the Debtors or the Estates in any pending matter pending anywhere; (iii) otherwise manage the Creditor Trust Assets; (iv) object to any Claim that attaches to the Creditor Trust and is to be paid under the Creditor Trust; (v) purchase insurance for the Creditor Trust and its fiduciaries; (vi) invest any property of the Creditor Trust; and (vii) otherwise represent the Creditor Trust in any and all matters affecting the Creditor Trust.  The Creditor Trust Trustee shall have the same liabilities to the Creditor Trust and its beneficiaries as would a Chapter 7 trustee under the Bankruptcy Code and shall have the same protections afforded such a trustee.

5.3.3.     Compensation.    The Creditor Trust Trustee shall be entitled to compensation of $500 per hour, and the reimbursement of reasonable expenses, subject to adjustment and other provisions provided for in the Creditor Trust Agreement.

5.3.4     Vesting of Assets.  On and after the Effective Date, the Creditor Trust shall be vested with the following assets, free and clear of all liens, claims, interests, and encumbrances, except to the extent this Plan expressly preserves or creates any such lien, claim, interest, or encumbrance (the "Creditor Trust Assets"):

(i)     all property vested in the Consolidated Estate as provided for in section 5.1 of this Plan; and

(ii)     the Plan Funding.

5.3.5     Beneficiaries.  The beneficiaries of the Creditor Trust shall be holders of Claims in Class 1, Class 2, Class 3, Class 4, and Class 5 subject to the liens and priorities as otherwise specified in this Plan.  Holders of Class 6 Equity Interests shall not be beneficiaries of the Creditor Trust and shall have no rights as such, except for a possible distribution as set forth in Section 5.3.6 of this Plan.

5.3.6    <u>Distributions to Class 6 Equity Interests</u>.  The Creditor Trust Trustee shall, as soon as practicable, determine the amount of potential Allowed Claims (including Disputed Claims subject to pending objections) and costs of administering the Creditor Trust (the "<u>Potential Trust Distributions</u>").   At any time, to the extent the remaining Creditor Trust Assets exceed the Potential Trust Distributions, the Creditor Trust Trustee may make a distribution to the Class 6 Equity Interests.  Additionally, once all Allowed Claims and costs of administering the Creditor Trust have been satisfied, the Creditor Trust Trustee shall promptly distribute all remaining Creditor Trust Assets to the Class 6 Equity Interests.

5.3.7    <u>Governance</u>.  All governance and other matters regarding the Creditor Trust shall be provided for in the Creditor Trust Agreement, which shall contain a deadline for the Creditor Trust to terminate, subject to requests to extend the same.

5.3.8    <u>Distributions</u>.  The Creditor Trust shall make distributions, from time to time, to its beneficiaries from the Creditor Trust Assets, to be determined by the Creditor Trust Trustee and as provided for in the Creditor Trust Agreement as to timing, but subject to all liens and priorities as otherwise specified in this Plan.  Any beneficiary of the Creditor Trust may commence an appropriate action, including by motion practice in the Bankruptcy Court, to compel any distribution.

5.3.9    <u>Bankruptcy Court Jurisdiction</u>.    The Bankruptcy Court shall have jurisdiction over all matters regarding the management of the Creditor Trust, over the Creditor Trust Trustee, and over such other matters affecting the Creditor Trust and the liquidation of the Creditor Trust Assets as is otherwise appropriate and as is provided for in this Plan, to the maximum extent possible.  The Bankruptcy Court shall likewise have continuing jurisdiction to provide guidance, control, and oversight of the Creditor Trust and the Creditor Trust Trustee, and the Creditor Trust Trustee shall have the ability, from time to time, to seek such guidance, control, oversight, and orders from the Bankruptcy Court regarding the Creditor Trust and its administration as is otherwise appropriate.

5.4    <u>Executory Contracts</u>.  On the Effective Date, and without need for further order, document, or action, all Executory Contracts shall be deemed rejected, to the extent not rejected prior thereto.  Any Rejection Damages Claim shall be filed by the Rejection Damages Claims Bar Date and shall be treated as a Class 5 Claim under this Plan.  To the extent that any insurance policy or agreement related to or ancillary to an insurance policy is an Executory Contract, and notwithstanding anything contained  in such contract to the contrary, all such insurance Executory Contracts are assumed and policies covering any insured loss arising prior to the Effective Date, and all rights related thereto, are assigned to and vest in the Consolidated Estate and the Creditor Trust, notwithstanding any contractual provision or limitation to the contrary.

5.5    <u>Automatic Stay</u>.  The automatic stay provided by section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the injunction provisions of this Plan and the Bankruptcy Code shall control.

5.6      Rights Under Section 505.  All Claims for taxes by Governmental Units and any claim for a refund regarding the same or other relief regarding the same shall remain subject to section 505 of the Bankruptcy Code and shall vest in the Creditor Trust.  The Creditor Trust may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any claim for taxes by a Governmental Unit.

5.7      Corporate Existence of Debtors.  Promptly after the Effective Date, the Debtors shall take such steps under applicable non-bankruptcy law to wind down their affairs, dissolve, and to terminate their corporate existence, with this Plan satisfying all applicable non-bankruptcy law regarding the same, including all notice and other liquidation and wind down provisions and procedures, and the Debtors shall file such final tax returns, and issue such final tax documents, as appropriate under applicable non-bankruptcy law evidencing the foregoing.  For the avoidance of doubt, all tax attributes of the Debtors shall remain property of the Debtors and shall not vest in the Consolidated Estate or otherwise be administered by the Creditor Trust.  For the further avoidance of doubt, in no event shall the dissolution or termination of the Debtors as corporate entities affect, prejudice, or limit any rights or property of the Creditor Trust.

5.8      Management of the Debtors After Confirmation.  After the Effective Date, the management of the Debtors shall be the same as the management of the Debtors on the Petition Date, for the sole purposes of making payments required to be made by the Debtors under this Plan and effectuating section 5.7 of this Plan, and who shall receive no compensation for doing so.

5.9      Plan Supplements.  Any supplement contemplated by this Plan shall, when filed with the Bankruptcy Court, automatically become part of the Plan.

5.10     Incorporation of Exhibits.  Any exhibits to this Plan, or any supplements to this Plan filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of this Plan if it is intended to address any issue in this Plan and if it is intended to become a part of this Plan.

5.11     Retention and Preservation of Causes of Action.  Unless expressly and specifically released in this Plan or through any order entered in the Bankruptcy Case, all Causes of Action assertible by the Debtors or the Estates are reserved and preserved under this Plan and transfer to and vest in the Consolidated Estate and Creditor Trust as otherwise provided for in this Plan, except solely where any Cause of Action is expressly released in this Plan.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF PLAN

6.1      Confirmation.  The Debtors submit that the Plan: (a) provides the necessary content required by Bankruptcy Code section 1190; and (b) is confirmable under section 1191 because: (i) pursuant to the terms of this Plan, Holders of Allowed Claims will not receive less than they would in a hypothetical chapter 7 liquidation; (ii) the Plan is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iii) the Plan is feasible as the Creditor Trust will be able to make the distributions contemplated under the Plan or there is a reasonable likelihood that the Creditor Trust will be able to make the distributions contemplated under the Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii).

Case 23-30767-swe11    Doc 103    Filed 07/18/23    Entered 07/18/23 16:24:33    Desc
Main Document    Page 18 of 27

6.2.    <u>Impairment Controversies</u>.  If a controversy arises as to whether any Class is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class under this Plan.

6.3.    <u>Classes and Claims Entitled to Vote</u>.  None of the Classes are impaired under this Plan and are deemed to have accepted this Plan.

**ARTICLE VII.**
**SUBCHAPTER V CONSIDERATIONS**

7.1.    <u>Satisfaction of § 1191(a)</u>.  The Plan satisfies the requirements of § 1191(a) of the Bankruptcy Code in connection with Confirmation of a Plan pursuant to Subchapter V of the Bankruptcy Code.

7.2.    <u>Liquidation Analysis</u>.  Pursuant to § 1190(1)(B), attached to the Plan as **<u>Exhibit A</u>** is a true and correct copy of the liquidation analysis of the Debtors.  Pursuant to the same, the Plan is in the best interests of Creditors.

**ARTICLE VIII.**
**TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS**

8.1.    <u>Objection Deadline</u>.  Any objection to a Claim when the Claim is not otherwise Allowed by this Plan must be filed by the Claims Objection Deadline or be forever barred and waived.  Any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim.  Provided that a claim objection is filed prior to the Claims Objection Deadline, such objection may be amended thereafter to assert any other applicable objection or grounds for objection, together with any other relief as otherwise appropriate.  Unless arising from an Avoidance Action or a Rejection Damages Claim arising from the rejection of an Executory Contract under this Plan, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to.  Any Disputed Claim may be litigated to Final Order.  The Creditor Trust Trustee may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date.  Nothing in this Plan extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late filed Claim than such Creditor has.

8.2.    <u>Creditor Response to Objection</u>.  With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection.  Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor.  Any such objection shall contain prominent negative notice language informing the objected-to Creditor of the same.

8.3.    <u>No Waiver of Right to Object</u>.  Except as expressly provided in this Plan, nothing contained in this Plan or the Confirmation Order shall waive, relinquish, release, or impair any right to object to any Claim.  A Claim that is specifically Allowed in this Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification other than that specifically Allowed in this Plan.

8.4.    <u>Miscellaneous Provisions for Disputed Claims</u>.  Nothing contained in this Plan or the Confirmation Order shall change, waive, or alter any requirement under applicable law that the holder of a Disputed Claim must file a timely proof of Claim, and the holder of such Disputed Claim who is required to file a proof of Claim and fails to do so shall receive no distribution through the Plan and the Claim shall be discharged, unless this Plan specifically and explicitly provides otherwise.  The adjudication and liquidation of Disputed Claims is a determination and adjustment of the debtor/creditor relationship and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable.  The holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court with respect to any such Claim, except with respect to any potential personal injury or wrongful death claim.  Exclusive venue for any proceeding involving a Disputed Claim shall be in the Bankruptcy Court or District Court in the Northern District of Texas, Dallas Division, unless the Bankruptcy Court or District Court withdraw the reference, transfer a proceeding, or abstain.  Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court.

8.5.    <u>Allowance of Disputed Claims</u>.  All Disputed Claims shall be liquidated and determined as follows:

8.5.1.    <u>Application of Adversary Proceeding Rules</u>.  Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Rule 9014 of the Bankruptcy Rules.  However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings.  The Creditor Trust Trustee may, at his election, make and pursue any objection to a Claim in the form of an adversary proceeding.

8.5.2.    <u>Scheduling Order</u>.  Unless otherwise ordered by the Bankruptcy Court, or if the objection is pursued as an adversary proceeding, a scheduling order may be entered as to each objection to a Disputed Claim upon the filing of a response thereto by the holder thereof.  The Creditor Trust Trustee may tender a proposed scheduling order with each objection and include a request for a scheduling conference for the entry of a scheduling order.

8.5.3.    <u>Mediation</u>.  The Bankruptcy Court may order the parties to mediate in connection with any objection to a Disputed Claim.  The Creditor Trust Trustee may include a request for mediation in its objection and request that the Court require mediation as part of the scheduling order.

8.5.4.    <u>Substantial Consummation</u>.  All distributions of any kind made to any of the holders of Allowed Claims after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief,

reversal, or modification by any court unless the implementation of the Confirmation Order is stayed by an order issued under the Bankruptcy Rules.

8.6     Amendments to Claims; Claims Filed After the Confirmation Date.  Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court.  Except as otherwise provided in the Plan, any new or amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Debtors, the Estates, the Creditor Trust, or the Creditor Trust Trustee.

# ARTICLE IX.
# EFFECTS OF PLAN CONFIRMATION

9.1     Plan Injunction.  Effective immediately on the Effective Date, and without need for further order, document, action, or instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons from taking any of the following actions on account of any Claim: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtors, the Estates, the Consolidated Estate, or the Creditor Trust, or any of their property, on account of a Claim that is treated under this Plan, except solely as permitted under this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Estates, the Consolidated Estate, or the Creditor Trust, or their property, on account of a Claim that is treated under this Plan, except solely as permitted under this Plan; (iii) creating, perfecting, or enforcing in any manner, directly or indirectly, any lien, charge, or encumbrance of any kind against the Debtors, the Estates, the Consolidated Estate, or the Creditor Trust, or their property, on account of a Claim, interest, or lien that is treated under this Plan, except solely as permitted under this Plan; and (iv) proceeding in any manner in any place whatsoever against the Debtors, the Estates, the Consolidated Estate, or the Creditor Trust, or their property, with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided*, *however*, that such injunction shall not preclude any party-in-interest from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court or other appropriate court, from appealing the Confirmation Order, or from filing a continuation statement to continue in effect a perfected security interest that survives the Effective Date.

9.2     Free and Clear Injunction.  Where any property is transferred "free and clear" of liens, claims, interests, and encumbrances under this Plan, all Creditors and persons are permanently enjoined and prohibited from seeking to assert any Claim, lien, interest, or right that is asserted or assertible against the Debtors, the Estates, or their property, against such transferred property, or against the holder thereof on account of such Claim, lien, interest, or right; *provided, however*, that nothing in this Plan enjoins, prohibits, or prejudices any direct claim that any such Creditor or person has against such third party, including on account of any guarantee or alleged fraud claim.

9.4 <u>No Liability for Solicitation or Participation</u>. Pursuant to section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

9.5 <u>Exculpation</u>. Except as specifically provided for herein, on and after the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtors or the Estates may have or be able to assert against (i) Munsch Hardt Kopf & Harr, P.C., its attorneys, employees, officers, agents, and shareholders and (ii) any director, officer, manager, or fiduciary of the Debtors, in each case solely for any actions or inactions taken by any of the foregoing in, or arising against the foregoing as a result of, the Bankruptcy Case or the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; *provided, however,* that nothing in this Plan releases any claim against any of the foregoing for gross negligence or intentional acts. The foregoing does not affect, prejudice, or release any claim or cause of action that any Person may have against any of the foregoing that is personal to such Person and is not a claim of the Estate. Nothing in this Plan, and nothing in the foregoing, waives any objection or other issue related to any Professional Claim.

## ARTICLE X.
## CONDITIONS PRECEDENT

10.1. <u>Conditions Precedent to Confirmation and Effectiveness of Plan</u>. The Plan shall not become effective until the following conditions shall have been satisfied: (i) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors; (ii) on the fifteenth (15th) day after the Confirmation Date, no notice of appeal of the Confirmation Order shall have been filed or, if filed, no order staying the Confirmation Order shall have been entered by such date; (iii) the Creditor Trust Agreement shall have been executed by the Creditor Trust Trustee and a copy thereof filed with the Bankruptcy Court; (iv) the Plan Funding shall have been made to the Creditor Trust; (v) all other specific condition precedents contained in this Plan shall have been satisfied; and (vi) a notice of the Effective Date shall have been filed by the Debtors in the Bankruptcy Case.

10.2. <u>Non-Occurrence of the Effective Date</u>. If the Plan is confirmed but the Effective Date does not occur: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of this Plan had not occurred; and (iv) this Plan will be of no further force and effect, with the result that the Debtors and other parties-in-interest will be returned to the same position as if confirmation had not occurred. The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

10.3.    <u>Notice of the Effective Date</u>.  On or before three (3) Business Days after occurrence of the Effective Date, the Debtors shall mail to all Persons served with a copy of the Plan a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the deadlines established under this Plan for the filing of Administrative Claims, Professional Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as they deem to be appropriate.

10.4.    <u>Modification of this Plan</u>.  The Debtors may alter, amend, or modify this Plan under section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the Substantial Consummation of this Plan, the Debtors or any party-in-interest in the Bankruptcy Case may, so long as the treatment of holders of Claims under this Plan and so long as the protections under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission, to reconcile any inconsistencies in this Plan or the Confirmation Order, and to address any other matters as may be necessary to carry out the purposes and effects of this Plan.

10.5.    <u>Revocation or Withdrawal of this Plan</u>.  The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If the Debtors revoke or withdraw this Plan prior to the Confirmation Date, this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

10.6    <u>Inadmissible Settlement Offer</u>.  If the Effective Date does not occur as otherwise provided for in this Plan, the Plan shall be treated as a settlement offer under Federal Rule of Evidence 408 and shall not be used as evidence to prove any alleged liability of the Debtors or anyone else.

**ARTICLE XI.**
**<u>RETENTION OF JURISDICTION AND CLAIMS</u>**

11.1.    <u>Jurisdiction of Bankruptcy Court</u>.    Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction:

11.1.1.    To hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

11.1.2.    To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim and to enter any order requiring the filing of proof of any Claim before a particular date;

11.1.3.    To ensure that distributions are accomplished as provided in the Plan;

11.1.4.        To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

11.1.5.        To construe and to take any action to enforce this Plan and the Confirmation Order;

11.1.6.        To issue such orders as may be necessary for the implementation, execution, and consummation of this Plan, including the enforcement of any release and/or injunction in this Plan, to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order, and to protect any person and its property from any action or threatened action taken in violation of any provision of this Plan;

11.1.7.        To hear and determine any applications to modify this Plan, to cure any defect or omission, or to reconcile any inconsistency in this Plan or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

11.1.8.        To hear and determine all applications for Administrative Claims;

11.1.9.        To hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, documents, or instruments executed in connection with this Plan;

11.1.10.       To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

11.1.11.       To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

11.1.12       To hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any property;

11.1.13.       To enter the Final Decree upon proper request;

11.1.14.       To command and enjoin any Creditor or Person to comply with the transfer and vesting of property of the Debtors and the Estates free and clear of liens, claims, interests, and encumbrances, as provided for in this Plan, and to command any Creditor or Person to release any lien or security interest required to be released or released by this Plan, or to order that any other Person may do to the same with the same full force and effect;

11.1.15.       To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights, and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtors or

the Estates, including, without limitation, matters concerning federal, state, local, and other taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

11.1.16        To hear and determine any Avoidance Actions;

11.1.17        To hear and determine all matters affecting the governance, administration, identity, replacement, compensation, and other internal matters of the Creditor Trust and the Creditor Trust Trustee;

11.1.18        To adjudicate, try, and liquidate all Causes of Action transferred to the Creditor Trust and to otherwise assist the Creditor Trust with monetizing its assets and collecting on all of its Causes of Action; and

11.1.19        To hear, determine, and enforce any Bankruptcy Rule 2004 examination ordered prior to the Effective Date, including any subpoena issued in connection therewith.

11.2.    <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in, or related to the Bankruptcy Case, including with respect to the matters set forth above in Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

11.3.    <u>No Creation of Jurisdiction</u>.  This Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists.  For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, withdrawal of the reference, or otherwise, this Plan does not purport to create or reinstate said jurisdiction; *provided, however*, that this Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

11.4.    <u>Retention and Preservation of General Rights</u>.  Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, the Debtors and the Estates retain any and all rights, property, and interests, regardless of whether they are scheduled, filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document modified by this Plan, but only as so modified; (vi) rights to any tax refund belonging to the Debtors; and (vii) claims and causes of action against any Creditor or person whatsoever, including for affirmative relief and to reduce any liability.

11.5    <u>Retention and Preservation of Specific Rights</u>.  Without limiting the effectiveness or generality of the foregoing, and unless expressly and specifically waived or released in this Plan or through any order entered in the Bankruptcy Case, and out of an abundance of caution, the Debtors and the Estates specifically reserve and retain the following claims and causes of action,

which shall in no way be extinguished, released, or prejudiced as a result of the confirmation of this Plan, and which are transferred to the Creditor Trust as otherwise provided for in this Plan:

    (i)    the Avoidance Actions;

    (ii)    all other Causes of Action, and all other claims and causes of action of the Debtors or the Estates, whether known or unknown, scheduled or unscheduled, asserted or unasserted, including but not limited to any and all affirmative claims against the Factors for fraud, usury, theft, collusion, and consequential damages for the same;

    (iii)    all claims and causes of action to subordinate any Claim;

    (iv)    all objections to Professional Claims and rights to disgorge or recover any pre-petition or post-petition payment to any professional; and

    (v)    all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to section 505 of the Bankruptcy Code.

### ARTICLE XII.
### MISCELLANEOUS PROVISIONS

    12.1.   Exercise of Liens.  Any lien preserved or granted in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and strict conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

    12.2.   No Admissions.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein including, without limitation, liability of any person on any Claim or the propriety of any classification of any Claim.

    12.3.   Governing Law.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal or state laws are applicable, or any pre-petition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation, and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

    12.4.   Substantial Consummation of Plan.  The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

    12.5.   Successors and Assigns.  The rights, benefits, and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

12.6.    Severability.    Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Debtors may, in their discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision.  Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

12.7.    Notices and Distributions.    On and after the Effective Date, all notices, requests, and distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtors.  Any holder of a Claim may designate another address for the purposes of this section by providing the Creditor Trust Trustee written notice of such address, which notice will be effective upon receipt as otherwise appropriate.

12.8.    Unclaimed Property.    If any property to be distributed on account of this Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Creditor Trust.

12.9.    Binding Effect.    The Plan shall be binding on and inure to the benefit of the holders of Claims and Equity Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns, and all parties-in-interest, as provided for by the Bankruptcy Code.

12.10.    Withholding and Reporting.    In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Debtors and Creditor Trust Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding and reporting requirements.

## ARTICLE XIII.
## CONFIRMATION REQUEST

The Debtors hereby request confirmation of this Plan.

Dated: July 18, 2023                    By: */s/ Thomas Berghman*

Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Ste. 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 978-4375
tberghman@munsch.com

*Counsel to the Debtors
and Debtors-in-Possession*